HAWAIIAN AIRLINES, Limited, v. TRANS–
PACIFIC AIRLINES, Limited (INTER–
ISLAND STEAM NAVIGATION CO., Lim-
ited, third-party defendant).

Civ. No. 817.

United States District Court
Hawaii.

Dec. 17, 1948.

See also 78 F.Supp. 1.

Garner Anthony, of Honolulu, Hawaii
(Robertson, Castle & Anthony, of Hono-
lulu, Hawaii, of counsel), for Hawaiian
Airlines, Limited and Inter-Island Steam
Navigation Co., Limited.

Sai Chow Doo, of Honolulu, Hawaii,
and Powell, Lear & Gaines, of Washington,
D. C., for defendant and third-party plain-
tiff, Trans-Pacific Airlines, Limited.

McLAUGHLIN, District Judge.

Prior phases of this litigation are to be
found reported in 73 F.Supp. 68 and Trans-
Pacific Airlines v. Inter-Island Steam Nav.
Co., D.C., 75 F.Supp. 690.

There is now before the court for dis-
position in advance of trial upon the anti-
trust cross-complaint, an amended motion
under Rule 34 as amended, 28 U.S.C.A.
Needless to say, it is firmly resisted.

The grant or denial in whole or in
part of this motion rests in the court's ju-
dicial discretion.[1] Because at this stage
of the litigation the ruling upon the motion
is unappealable, because the issue is one
of first instance in this district, although
ordinarily such motions may be disposed
of without a written opinion, I deem the
issue here arising to call for one.

Under its cross-complaint describing a
civil cause of action under the Sherman

[1] United States v. United Shoe Machinery Corp., D.C.Mass.1948, 76 F.Supp. 315.

8 F.R.D.—29

450

and Clayton Acts, 15 U.S.C.A. §§ 1, 2, 3, 14, 18 and 19, Trans-Pacific invokes Rule 34 and calls upon Hawaiian and Inter-Island to produce for inspection, et cetera, a voluminous amount of material. Trans-Pacific's requests describe 19 different categories. Some of the requests relate back to 1929 and others post-date the cross-complaint by pertaining to 1948. Abbreviated, the requests are for originals or copies of all and any:

(a) Reports filed with the Civil Aeronautics Board from 1940 to Nov. 3, 1948, by Hawaiian.

(b) Same as to tariffs filed.

(c) Same as to agreements filed since Jan. 1, 1939.

(d) Same as to requests for approval of interlocking directorates since Jan. 1, 1939.

(e) Same as to requests for approval of stock control of Hawaiian by Inter-Island since Jan. 1, 1939;

(f) Annual corporate exhibits filed by both corporations with the Territory since 1939 (withdrawn in argument as since procured from Territorial Treasurer).

(g) Minutes and memoranda of meetings of directors and executive committee of both corporations since Jan. 30, 1929.

(h) and (i) Written communication by any means between the two corporations since Jan. 1, 1929, and up to Nov. 3, 1948.

(j) Contracts of carriage by either corporation from Jan. 1, 1939, to Nov. 3, 1948.

(k) The Apr. 21, 1947, contract between Hawaiian and The Farmers' Exchange, plus any and all similar contracts made by either corporation with others since Jan. 1, 1940, to Nov. 3, 1948 (allowed in part by consent).

(l) Data filed by Inter-Island with the Maritime Commission, including correspondence connected therewith, during the period Jan. 1, 1940, to Nov. 3, 1948.

(m) Written material including correspondence filed with or sent to the Civil Aeronautics Board in connection with Hawaiian's United States mail contract from Jan. 1, 1939, to Nov. 3, 1948.

(n) Written material, including correspondence, filed with or sent to the Civil Aeronautics Board by either corporation, by directors, officers, or employees of either corporation during the period June 1, 1946, to Nov. 3, 1948, which in any way mention or concern Trans-Pacific or its officers, employees or stockholders, and including especially letters and other communications sent by or exchanged between Stanley Kennedy, president of Hawaiian, and any official, employee, member, or agent of the Civil Aeronautics Board from June 1, 1946, to Nov. 3, 1948.

(o) Written material possessed by either corporation and made by their directors, officers, and employees with especial reference to contracts for the transportation of persons or property, relating or referring in any way to Trans-Pacific or any other air carrier in Hawaii from Jan. 1, 1939, to Nov. 3, 1948.

(p) Stenographic notes, with transcripts thereof, possessed by either corporation, made during or as a result of telephone conversations relating or referring to Trans-Pacific or any air carrier competing with Hawaiian (presumably since Jan. 1, 1939).

(q) Written material relating to actual or contemplated press or radio releases referring or relating to competition between Hawaiian and Inter-Island and any other air carrier in Hawaii, or relating or referring to any plan to discontinue or diminish Inter-Island's ship passenger service; or referring or relating to any plan or program to effect any change in the holdings of stock in Hawaiian by Inter-Island; or pertaining to corporate reorganization or material change in the corporate structure or stock holdings in either Hawaiian or Inter-Island from Jan. 1, 1946, to Nov. 3, 1948.

(r) A list of the stockholders and stockholdings of said persons in either corporation as of May 1, 1947 and also as of Oct. 13, 1948.

(s) Documents possessed by either corporation concerning or relating to radio frequency channels, or to the performance of services connected with radio for any air carrier in Hawaii other than Hawaiian.

Hawaiian and Inter-Island concede that it no longer avails one to raise the hue and

cry of "fishing expedition." However, they assert that the motion is defective.

It is argued that while it is true that Rule 34 is susceptible of a use which is independent of Rules 26, 30 and 31, nevertheless as against the type of broad designation here presented under Rule 34 fairness should move the Court, in the exercise of its discretion, to deny the motion, because the movant can then by utilizing the other discovery rules find out exactly what it wants and move again under Rule 34 with a specific label on each requested document.

■ As illustrative of the point, reference is made to the fact that since this motion and as it is under advisement, Trans-Pacific is proceeding under Rule 30 to take the deposition of a person who is president of both Hawaiian and Inter-Island. Of this the Court is aware, for it has been called upon to order this deposition terminated or limited under Rule 30 (d). Hawaiian's and Inter-Island's Rule 30(d) motion was orally denied after reading the transcript and listening to counsel's arguments. This transcript reveals, indeed, how a nice theory can be at odds with reality and give strength to the belief that the new rules are essentially practical.

The proper approach to a problem arising under any one of the deposition-discovery rules is set forth by the Supreme Court in this oft quoted language:[2] "We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise."

And contrary to views previously held, it is now recognized that although the deposition-discovery rules are integrated mechanisms, they are each susceptible of independent use.[3] It is not necessary to first take depositions before resorting to Rule 34. Rules 26, 30, 31 and 34 may be utilized independently, simultaneously, or progressively, so long as the requirements of the rule or rules invoked are met.

That being so—as Hawaiian and Inter-Island concede—there remains the question of whether Trans-Pacific has made a proper designation of the documents it wishes to inspect.

■ It is first said that Trans-Pacific's designation is defective in that it is too broad, as it should be sufficiently specific to enable the person ordered to produce to go to his files and say, "Here it is."[4] But as the District Court for the Southern District of New York itself now recognizes, the license to fish granted by Rule 34 is not to be so restricted, and it does so in the following clear language:

"I am inclined to follow the latter view and to abandon the practice I have previously favored; Hillside Amusement Co. v. Warner Bros. Pictures, Inc., supra.

"The Federal Rules of Civil Procedure were adopted 'to secure the just, speedy, and inexpensive determination of every action'. Rule 1. They were intended to introduce the simplest procedure for securing evidence to be presented to the court. Simplicity of procedure would compel the elimination of unnecessary steps. Under any circumstances, the party whose documents are sought must, in the first instance, be presented with a categorical description of documents, be it in a motion under Rule 34, interrogatories under Rule 33, or depositions under Rule 26. Proceeding initially

---

[2] Hickman v. Taylor, 1947, 329 U.S. 495, at page 507, 67 S.Ct. 385, 392, 91 L.Ed. 451.

[3] Olson Transp. Co. v. Socony-Vacuum Oil Co., D.C.E.D.Wis.1944, 7 F.R.D. 134; United States v. U. S. Alkali Export Ass'n, Inc., D.C.S.D.N.Y.1946, 7 F.R.D. 256.

[4] United States v. American Optical Co., D.C.S.D.N.Y.1942, 2 F.R.D. 534; Hillside Amusement Co. v. Warner Bros. Pictures, Inc., D.C.S.D.N.Y.1944, 7 F.R. D. 260.

under Rule 34 has the virtue of simplicity and directness. That the framers of the Rules must have intended that Rule 34 would serve as an appropriate vehicle for uncovering the particular documents desired is supported by the heading of Rule 34 which speaks of 'Discovery and Production of Documents * * *.'

"My conclusion as to the meaning of 'designated' in Rule 34 is supported by the 'Report of Proposed Amendments to Rules of Civil Procedure', issued by the Advisory Committee on Rules of Civil Procedure, dated June 14, 1946, and submitted to the Justices of the Supreme Court.

"At page 53 of the report, the Committee states: 'An objection has been made that the word "designated" in Rule 34 has been construed with undue strictness in some district court cases so as to require great and impracticable specificity in the description of documents, papers, books, etc., sought to be inspected. The Committee, however, believes that no amendment is needed, and that the proper meaning of "designated" as requiring specificity has already been delineated by the Supreme Court. See Brown v. United States, 1928, 276 U.S. 134, 143, 48 S.Ct. 288, 72 L.Ed. 500 * * *; Consolidated Rendering Co. v. Vermont, 1908, 207 U.S. 541, 553, 554, 28 S.Ct. 178, 52 L.Ed. 327, 12 Ann.Cas. 658 * * *'.

\* \* \* \* \* \*

"Time and again we are reminded that one of the objectives of the Federal Rules is to simplify procedure, and, more particularly, we are enjoined to interpret Rule 34 liberally. June v. George C. Peterson Co., 7 Cir., 1946, 155 F.2d 963, 967; Monarch Liquor Corp. v. Schenley Distillers Corp., D.C.N.D.N.Y.1941, 2 F.R.D. 51.

"Particularly is that so where the complaint alleges a conspiracy, as it does in this case. United States v. Schine Chain Theatres, Inc., D.C.W.D.N.Y.1942, 2 F.

R.D. 425, 427; Olson Transportation Co. v. Socony-Vacuum Oil Co., D.C.E.D.Wis. 1944, 7 F.R.D. 134."[5]

That other courts have followed this broader interpretation of the function of Rule 34, which this court also now adopts, is reflected in the reports of decisions both before and after the amendment to this rule.[6]

A civil lawsuit, therefore, being no longer susceptible of being made a game if the rules are properly invoked; it being no longer necessary to try a lawsuit in the dark in the federal courts;[7] and with "mutual knowledge of all the relevant facts * * * essential to proper litigation"[8] the application here of the principle of fairness does not impress me as requiring a holding that Trans-Pacific can invoke the rule only after it has first and perhaps futilely utilized other discovery devices. Indeed, if Trans-Pacific has met this Rule's requirements, the cited authorities would call for a conclusion of unfairness if having the right the court should hold it to be precluded from exercising it until it first proceeded otherwise. To be sure if the Rule 34's requirements are not met, the motion will be denied with the suggestion that perhaps the use of the other discovery mechanisms might provide a basis for a renewed second such motion.[9]

Here, then, the essential question is: Is Trans-Pacific's designation of categories, as distinguished from a designation of each specific document wanted for inspection, sufficient to fulfill the requirement of "designated" as that word is used in Rule 34 as amended?

In view of the nature of this cross-complaint spelling out as it does charges of violations of the Sherman and Clayton Acts, and with adherence to the views expressed by Judge Wyzanski on this subject[10] to the effect that the interests of justice will be best promoted by holding

---

[5] United States v. United States Alkali Export Ass'n, Inc., D.C.S.D.N.Y.1946, 7 F.R.D. 256, 258.

[6] United States v. United Shoe Machinery Corp., supra; Hirshhorn v. Mine Safety Appliances Co., D.C.W.D.Pa.1948, 8 F.R.D. 11, at page 21; Lindsay v. Prince, D.C.N.D.Ohio 1948, 8 F.R.D. 233.

[7] Hirshhorn v. Mine Safety Appliances

Co., supra; Reeves v. Pennsylvania R. Co., D.C.Del.1948, 80 F.Supp. 107.

[8] Hickman v. Taylor, supra.

[9] Synek v. McCarthy, D.C.S.D.N.Y.1948, 8 F.R.D. 323.

[10] United States v. United Shoe Machinery Corp., supra; Hirshhorn v. Mine Safety Appliances Co., supra, 8 F.R.D. at page 21.

the word "designated" to be complied with by an indication of the category of documents sought, while to hold that each document requested must be specifically identified in the "Here it is" manner would only serve dilatory purposes or tend to frustrate the disclosure of all the facts necessary to a proper decision, I deem Trans-Pacific's motion to sufficiently comply with the word "designated" appearing in Rule 34. Consequently, the motion is granted.

The granted motion obviously approves the inspection of documents long pre-dating Trans-Pacific's entry into the business of air transportation, and also post-dating the date of the cross-complaint. The former is allowed in view of the nature of the cross-complaint[11] while the latter is allowed upon the theory that subsequent actions may be relevant to and clarifying of prior acts and actions by Hawaiian and Inter-Island. The grant may also cover some material which the movant might be able to procure elsewhere (from the Civil Aeronautics Board, for example) or which it might already have itself in copy form. Delay, expense, and complicated legal questions will, nevertheless, be obviated by directing the production from an authentic source, originals or copies of all matter covered by the grant, and it will also lay at rest needless quibbling as to such material.

Ordered granted:

1. Requests (a) to (e), inclusive.

2. Requests (g).

3. Requests (h) and (i), but only such material as bears a direct and reasonable relationship to the general air and water transportation business in the Territory and to actual, anticipated, probable, or possible competition, or lack thereof, in said business.

4. Requests (j) and (k), excluding run of the mill contracts, but including special or exclusive contracts of the type the Farmers' Exchange contract is alleged to be.

5. Requests (l) and (s), inclusive.

The temper of this litigation to date might well warrant a further order of the Court to insure a full measure of compliance.[12] But the exercise of this power shall be held in reserve and ungrudging compliance with this order will be presumed until and unless the contrary be affirmatively and satisfactorily shown.

---

[11] United States v. United States Alkali Export Ass'n, supra; Hillside Amusement Co. v. Warner Bros. Pictures, supra; United States v. United Shoe Machinery Corp., supra; Quemos Theatre Co. v.

Warner Bros. Pictures, D.C.D.N.J.1940. 35 F.Supp. 949.

[12] United States v. United Shoe Machinery Corp., supra, 76 F.Supp. at page 317; Olson Transp. Co. v. Socony-Vacuum Oil Co., supra, 7 F.R.D. at page 136.